```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

OLADIPO SALAKO,

                    Plaintiff,              MEMORANDUM & ORDER
                                             18-CV-1312(EK)(ST)
         -against-

STATE OF NEW YORK,

                    Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff Oladipo Salako commenced this action through counsel on March 1, 2018. After discovery and summary judgment briefing, I granted Plaintiff's request to dismiss his attorney and proceed *pro se.* I also granted Plaintiff leave to file a second amended complaint (the "SAC"). In the SAC, now filed, Plaintiff calls himself a "whistle blower," whereas the prior complaint had asserted only discrimination and retaliation claims. Apart from this change, the SAC levels substantially the same allegations and claims as the first amended complaint.

The prior complaint named the New York City Department of Corrections ("DOC") as the defendant, despite the fact that it is not a "suable" entity under applicable law.[1] This defect

---

[1] Federal courts look to state law to decide whether a municipal entity is amenable to suit in federal court. Fed. R. Civ. P. 17(b)(3). Here, the

was the subject of extensive briefing and argument prior to the dismissal of Salako's attorney. Rather than naming the proper party (New York City), however, the SAC now names New York State as the sole defendant.

The City — whose lawyers remain counsel of record — has moved to dismiss the case in its entirety. Given Plaintiff's *pro-se* status and his clear intention to proceed against his employer, I construe the complaint to assert its claims against the City of New York. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *see also, e.g.*, *Vasquez v. Doe(s)*, No. 20-CV-5851, 2020 WL 5880254, at *1 (S.D.N.Y. Oct. 1, 2020) (construing complaint against one town's police officers as brought against the county sheriff instead, where the named defendants "cannot provide [plaintiff] with the injunctive relief he seeks"); *Gonzalvo v. State of New York*, No. 11-CV-0909, 2013 WL 4008881, at *2 (N.D.N.Y. Aug. 2, 2013) (substituting New York state for an individual defendant "for

---

New York City Charter is the relevant authority. *See, e.g.*, *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008). The Charter provides that actions and proceedings to recover penalties for legal violations shall be brought against the City of New York and not any agency thereof, except where otherwise provided by law. N.Y.C. Charter Ch. 17, § 396. Therefore, agencies of New York City are not "suable" entities. *See e.g.*, *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Baily v. New York City Police Dept.*, 910 F. Supp. 116, 117 (E.D.N.Y. 1996).

2

the sake of judicial efficiency," and holding that the court's authority to manage its docket accordingly "is well supported").

The record reveals that Plaintiff's sole federal cause of action is time-barred. Therefore, and for the reasons stated below, the City's motion to dismiss under Fed. R. Civ. P. 12(b)(6) is granted.

## I.  Background

### A.  Factual Allegations

The following facts are drawn from the SAC. Plaintiff, an African-American male, has been employed at the DOC since November 2005 in various roles; he started as a Correction Officer and was eventually promoted to Captain. SAC ¶¶ 32-33. The alleged unlawful behavior began in or around August 2015, after Plaintiff was appointed Captain of the Investigation Division of DOC's Canine Unit. *Id.* ¶¶ 34, 42. Plaintiff claims that he was "set up for failure" in the Canine Unit because, "being the only African-American" in the unit, he was "excluded from training" in canine handling, but was nonetheless expected to supervise other trained officers. *Id.* ¶¶ 44-45. He alleges that this was part of a broader pattern of discrimination in the unit, as reflected in the effort to fill a job vacancy for a "canine handler" position in February 2016. *Id.* ¶¶ 47-48. Plaintiff states that of 102 candidates, nineteen were selected for interviews, none of whom were African American

3

— despite there being "many qualified African American applicants suited for the position." *Id.* ¶¶ 48-49. That same month, Plaintiff complained to a higher-ranking officer about the lack of training and diversity in the Canine Unit. *Id.* ¶ 50. Following this, in April 2016, Plaintiff was reassigned to another DOC facility called GMDC. *Id.* ¶ 53. He was later informed that he had been reassigned because he had allowed a civilian contractor to enter the jail in possession of a razor, although Plaintiff claims he had followed protocol. *Id.* ¶ 55.

In his new role at GMDC, the environment was "wrought with tension and lack of trust." *Id.* ¶ 61. This is because earlier in his career, Plaintiff had served in the internal affairs bureau of DOC, and had investigated some of his new colleagues at the GMDC for disciplinary violations. *Id.* Plaintiff alleges that unidentified colleagues called him a "rat" and a "snake." *Id.* ¶ 66. In or around June 2016, Plaintiff was told he would be transferred to another unit, but that never occurred. *Id.* ¶ 64.

On March 24, 2017, Plaintiff filed a workplace discrimination complaint with the New York State Division of Human Rights ("SDHR"). *Id.* ¶ 74. Following this, Plaintiff alleges that he "continued to suffer baseless write-ups, accusations, warnings, and administrative charges." *Id.* ¶ 75 (cleaned up). The SAC refers to two instances of "departmental

4

charges" — in August and December of 2017. *Id.* ¶¶ 76, 77. However, the SAC provides little information about these incidents, alleging only that the August charge was "expunged," and that the December charge was "meritless and baseless." *Id.* ¶¶ 109-10.

**B.    Procedural History**

After Plaintiff commenced this action through counsel in March 2018, two issues arose. First, during summary judgment briefing, Plaintiff's counsel attached, for the first time, a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") dated October 30, 2017; the complaint had referenced only a December 1, 2017 right-to-sue letter.[2] In response, the City argued that the action was time-barred, because the filing of the complaint on March 1, 2018 occurred more than ninety days after Plaintiff received the October 30th right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1). Second, after summary judgment briefing concluded, Plaintiff moved to relieve his counsel, arguing that counsel had been ineffective, that the case was a "needless abuse of the legal system," "completely without merit and [] filed solely for improper

---

[2] The October 30th letter stated that "the EEOC [was] unable to conclude that the information obtained establishe[d] violations of the statutes."  ECF No. 71-8.  The December 1st letter provided that "the EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge."  ECF No. 71-9.

5

purposes," and that it should have been brought as a "whistleblower action" under New York law. Notice of Voluntary Dismissal, ECF No. 52. He also asked the Court to dismiss the action and permit him to file a new complaint. The Court granted Plaintiff's request to relieve counsel and granted leave to file the second amended complaint.

The SAC, filed *pro se*, makes no new factual allegations. Despite labeling Mr. Salako as "Plaintiff/Whistle Blower," the SAC sets forth the same causes of action under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law. SAC ¶ 5. Notably, the SAC alleges that Plaintiff received a right-to-sue letter from the EEOC only on December 1, 2017. This allegation is contradicted by the October 30, 2017 right-to-sue letter, which Plaintiff's former counsel submitted at a prior stage of this case, and of which the Court can take notice.

## II. Legal Standard

To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

6

662, 678 (2009). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). Moreover, "[a] document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, mere "labels and conclusions" are not assumed to be true. *Iqbal*, 556 U.S. at 662.

### III. Discussion

The only federal claims alleged in the SAC — the Title VII claims — are time-barred. An employment discrimination claimant must file his complaint in federal court within ninety days of receipt of the right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5. Here, Plaintiff received two right-to-sue letters from the EEOC, the first on October 30, 2017 and the second on December 1, 2017. Although Plaintiff did not reference the October 30th letter in the SAC, the Court may consider it. *See e.g.*, *Muhammad v. New York City Transit Auth.*, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006) (an EEOC right to sue letter is a public record of which a court can take judicial notice); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949

7

F.2d 42, 47-48 (2d Cir. 1991) (district court may consider exhibits attached to defendant's motion papers where "there [is] undisputed notice to plaintiffs of their content and they [are] integral to plaintiff's claim").

Where the "EEOC has issued two right-to-sue letters concerning identical claims, the second right-to-sue letter cannot extend the plaintiff's time to file in federal court. Instead, the ninety-day statute of limitations for Title VII claims must be calculated from the earlier of the two right-to-sue letters." *Hilton v. Bedford Paving, LLC*, No. 08-CV-6552 CJS, 2011 WL 3957269, at *9 (W.D.N.Y. Sept. 7, 2011) (collecting cases); *see also Melie v. EVCI/TCI Coll. Admin.*, No. 08-CV-5226, 2009 WL 1404325, at *4-5 (S.D.N.Y. May 20, 2009) ("Ordinarily, when a plaintiff has been issued two right-to-sue letters, the time to sue on a Title VII claim runs from the receipt of the first letter, not the second.") *aff'd*, 374 F. App'x 150 (2d Cir. 2010). Plaintiff provided no indication that these letters relate to different claims. Neither has he presented a reason why this case presents one of the "rare and exceptional circumstances" in which the statute of limitations should be equitably tolled. S*ee Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003). Therefore, the Title VII claims are time-barred.

8

Even if the complaint had been filed within the ninety-day statutory period, many of the challenged actions are still time-barred. Plaintiff filed his first claim with the New York State Division of Human Rights on March 24, 2017. SAC ¶ 107. When a claim is first filed with a state administrative agency, the EEOC requires that such filing occur within 300 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). That means conduct occurring prior to May 28, 2016 was time-barred when Plaintiff filed his SDHR claim. This calculus bars Plaintiff's claims relating to training and hiring in the Canine Unit, which occurred in April 2016. The claims specifically related to transfer to GMDC in April 2016 are also time-barred on this analysis. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109-10 (2002) (holding that "discrete acts" are "not actionable if time barred, even when they are related to acts alleged in timely filed charges").[3]

---

[3] In any event, these claims do not plausibly plead a Title VII violation. The allegations that the work environment at "GMDC" was "wrought with tension" and that some unidentified coworkers at an unknown time called Plaintiff a "rat" and "snake" are not sufficient to establish the "severe or pervasive" conduct necessary for a hostile work environment claim. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). In addition, Plaintiff does not plausibly state a retaliation claim in connection with the disciplinary charges. And Plaintiff does not plausibly allege an "adverse effect" from the August charge, because that charge was dismissed. *See Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996) (affirming dismissal of retaliation claim because "the charges had not yet been adjudicated and . . . if the charges were ultimately dismissed, [plaintiff] would not have suffered any adverse effect from them"). In addition, there is no information in the second amended complaint about the December charge, except for the conclusory assertion that it was "meritless and baseless."

9

Having dismissed the federal claims, the Court declines to exercise supplemental jurisdiction over the state-law claims, including any state whistleblower action. 28 U.S.C. § 1367(c); *see also Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("[O]ur Court has held, as a general proposition, that if all federal claims are dismissed *before trial* . . ., the state claims should be dismissed as well." (cleaned up)); *Schiffman v. Epstein*, 04-CV-2661, 2009 WL 1787760, at *7 (S.D.N.Y. June 23, 2009) ("The strong preference in this Circuit is for district courts to decline to exercise supplemental jurisdiction under § 1367(c)(3) when all of the federal claims are dismissed from the suit prior to trial.").

## IV. Conclusion

For the foregoing reasons, the City's motion to dismiss the second amended complaint is granted. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

/s Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: March 24, 2021
Brooklyn, New York